RECORD NUMBER: 14-6352

# United States Court of Appeals

*for the*

# Fourth Circuit

**WILLIAM EDWARD REBROOK, III,**

*Appellant,*

– v. –

**UNITED STATES OF AMERICA,**

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

# OPENING BRIEF OF APPELLANT

**LONNIE CARL SIMMONS**
**DITRAPANO, BARRETT, DIPIERO,**
**MCGINLEY & SIMMONS PLLC**
**604 Virginia Street, East**
**Charleston, WV 25301**
**(304) 342-0133**

*Counsel for Appellant*

**CP** **COUNSEL PRESS** • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  14-6352 _____    Caption:  William Edward ReBrook, III v. United States _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

William Edward ReBrook, III _____
(name of party/amicus)

_____

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                  ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                      ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____ March 18, 2014 _____

Counsel for: William Edward ReBrook, III _____

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____ March 18, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

R. Booth Goodwin, II
United States Attorney
Larry R. Ellis
Assistant United States Attorney
P.O. Box 1713
Charleston, WV 25326

_____          _____ March 18, 2014 _____
        (signature)                              (date)

# TABLE OF CONTENTS

Corporate disclosure statement

Table of contents .................................................................................i

Table of authorities .............................................................. iii

I.     Jurisdictional statement ..................................................1

II.    Statement of the issue presented for review:

        Whether the District Court erred in denying a writ of
        *coram nobis*, based upon *Skilling v. United States*, 561
        U.S. 358,130 S.Ct. 2896 (2010), which held an honest
        services wire fraud conviction cannot be sustained unless
        the conviction was based upon proof the defendant
        received bribes or kickbacks? ...............................................1

III.   Statement of the case ......................................................1

        Statement of the facts.......................................................7

V.     Summary of the argument .........................................11

VI.    Argument .......................................................................12

        The District Court erred in denying a writ of *coram nobis*,
        based upon *Skilling v. United  States*, 561 U.S. 358, 130 S.Ct.
        2896  (2010), which held an honest services wire fraud
        conviction cannot be sustained unless the conviction was based
        upon proof the defendant received bribes or kickbacks and here,
        the United States conceded ReBrook never received a bribe or
        kickback ........................................................................12

        A.     ReBrook meets the standard for issuance of a writ
                of *coram nobis*.................................................12

        B.     *Skilling* invalidates ReBrook's honest services
                wire fraud conviction .........................................15

C.    ReBrook sufficiently preserved the honest services
        wire fraud issue ...................................................................17

D.    The jury was never presented with a "property"
        wire fraud theory .............................................................. 26

VII.    Conclusion ...........................................................................30

VIII.    Request for oral argument ..............................................31

Certificate of compliance

Certificate of service

ii

# TABLE OF AUTHORITIES

**Cases:**

*Bereano v. United States*,
    2012 WL 683545 (D.Md. 2012) ........................................................... 13-14

*Bereano v. United States*,
    706 F.3d 568 (2013) ............................................................................. 13-14

*Bryan v. United States*,
    2013 WL 6709940 (2013) .............................................................................1

*In re Winship*,
    397  U.S. 358 (1970) ........................................................................... 25-26

*Ingber v. Enzor*,
    841 F.2d 450 (2nd Cir. 1988) .....................................................................17, 24

*Kolender v. Lawson*,
    461 U.S. 353 (1983) ....................................................................................20

*Mathis v. United States*,
    369 F.2d 43 (4th Cir. 1966) .....................................................................17, 23

*McNally v. United States*,
    483 U.S. 350 (1987) .............................................................. 15, 20, 22-24, 27

*Ross v. Reed*,
    704 F.2d 705 (4th Cir. 1983),
    *aff'd.* 468 U.S. 1 (1984) ................................................................... 17, 25-26

*Shausan v.  United States*,
    117 F. 2d 110 (1941) ..................................................................................15

*Skilling v. United  States*,
    561 U.S. 358, 130 S.Ct. 2896 (2010) ............................................... *in passim*

*United States v. Akinsade*,
    686 F.3d 248 (4th Cir. 2012) ........................................................................13

*United States v. Bryan*,
58 F.3d 933 (1995) ................................................................................1, 19

*United States v. Hoffman*,
1991 U.S.App.LEXIS 3734 (4th Cir. 1991)(Unpublished).....................17, 22

*United States v. Mandel*,
862 F.2d 1067 (4th Cir. 1988),
*cert. denied*, 491 U.S. 906 (1989)..................................... 7, 17, 22, 24, 27-28

*United States v. O'Hagan*,
521 U.S. 642 (1997)...............................................................................5

*United States v. Post*,
950 F.Supp.2d 519 (S.D.N.Y. 2013) ...........................................................28

*United States v. ReBrook*,
837 F.Supp. 162 (S.D.W.Va. 1993) ............................................................ 2

*United States v. ReBrook*,
842 F.Supp. 891 (S.D.W.Va. 1994) ............................................................ 4

*United States v. ReBrook*,
58 F.3d 961, 963 (4th Cir.), *cert. denied*,
516 U.S. 970 (1995)........................................................... 1, 3, 5, 8-10, 18-19

*United States v. Shamy*,
886 F.2d 743 (4th Cir. 1989) ...........................................................17, 24, 26

*United States v. Walters*,
997 F.2d. 1219 (7th Cir. 1993) ..................................................................20

**Statutes:**

15 U.S.C. §78ff ................................................................................ 3

15 U.S.C. §78j(b) ............................................................................. 3

18 U.S.C. §1343 ............................................................................. 18

18 U.S.C. §1346 ................................................................ 4, 6, 18-19, 21

28 U.S.C. §1291 .................................................................................... 1

28 U.S.C. §1651 .................................................................................... 1

17 C.F.R. §240.10b-5 ........................................................................... 3

**Miscellaneous:**

Geraldine Szott Moohr, *Mail Fraud and the*
*Intangible Rights Doctrine: Someone to Watch Over Us*,
   31 HARV. J. ON LEGIS. 153 (1994) ................................................. 20

## I. Jurisdictional statement

The underlying petition for writ of error *coram nobis* was filed on August 9, 2010, by Appellant William Edward ReBrook, III, (ReBrook),  pursuant to 28 U.S.C. §1651,  the All Writs Act.  This Court has jurisdiction in this appeal under 28 U.S.C. §1291.

## II.  Statement of the issue presented for review

**Whether the District Court erred in denying a writ of *coram nobis*, based upon *Skilling v. United States*, 561 U.S. 358, 130 S.Ct. 2896  (2010), which held an honest services wire fraud conviction cannot be sustained unless the conviction was based upon proof the defendant received bribes or kickbacks?**

## III.  Statement of the case

In April, 1990, ReBrook was hired by the West Virginia Lottery Commission to serve as legal counsel on a part-time basis.[1]  The director of the Lottery Commission was Elton "Butch" Bryan.[2]  On June 17, 1993, ReBrook was indicted for one count of honest services wire fraud and one count of securities fraud.  (JA at 15).  The theory

---

[1]*United States v. ReBrook*, 58 F.3d 961, 963 (4th Cir.), *cert. denied*, 516 U.S. 970 (1995).

[2]Prior to ReBrook's trial, Mr. Bryan was convicted of mail fraud, wire fraud, securities fraud, and perjury.  His convictions were upheld by this Court in *United States v. Bryan*, 58 F.3d 933 (1995), except for the securities fraud conviction.  Mr. Bryan also sought and was denied *coram nobis* relief.  *Bryan v. United States*, 2013 WL 6709940 (2013).  Mr. Bryan did not appeal the *coram nobis* decision reached in his case.

asserted by the United States against ReBrook was summarized by the District Court

in the underlying criminal case as follows:

> The Government charges the Defendant with devising a
> scheme to defraud the State of West Virginia, its citizenry,
> and the Lottery of Defendant's honest and faithful services
> as Lottery attorney by misappropriating and utilizing
> confidential nonpublic information regarding an alleged
> plan to expand video lottery in West Virginia.[3]

Thus, the honest services wire fraud theory was intertwined with and inseparable

from the allegation that ReBrook misappropriated nonpublic information.  The District

Court in *ReBrook*, 837 F.Supp. at 170, gave the following summary of the United

States' honest services wire fraud theory:

> The Government contends Defendant's duty of honest
> service arose from: (1) his ethical responsibilities as an
> attorney for the Lottery; (2) his obligations under the Ethics
> Act; and (3) his inherent responsibilities as a West Virginia
> public employee.  To support the validity of the indictment,
> the Court need only find at least one of these duties existed,
> so that the allegations asserted by the Government properly
> accuse Defendant of violating a fiduciary duty to his
> employer.

The essential facts in this case–ReBrook purchased 100 shares of stock in a

company he learned from Mr. Bryan was going to be awarded an exclusive lottery

contract by the Commission in the near future and ReBrook shared this alleged

---

[3]*United States v. ReBrook*, 837 F.Supp. 162, 167 (S.D.W.Va. 1993).

nonpublic information with various other individuals, who also purchased stock in this same company–were stipulated to by the parties. (JA at 1130).

On September 10, 1993, ReBrook filed a motion to dismiss the honest services wire fraud count for several reasons, including the vagueness and lack of any authority defining what specific acts would violate the alleged duty of honest services, and the securities fraud count for several reasons, including the lack of any decision by the United States Supreme Court approving the misappropriation theory.[4] (JA at 30). On September 22, 1993, ReBrook filed a second motion to dismiss, again challenging the honest services wire fraud charge, arguing as part-time counsel for the Lottery Commission, he was not a public employee and also arguing again the lack of any fair notice as to how this duty to provide honest services could be violated. (JA at 441). The District Court issued a decision on October 26, 1993, denying ReBrook's motion to dismiss. (*ReBrook*, *supra;* JA at 491). At no point in this decision did the District Court suggest the theory for proving the wire fraud count was something other than

_____

[4]As this Court explained in *ReBrook*, 58 F.3d at 965, in describing the misappropriation theory under §10(b) of the Securities Exchange Act, 15 U.S.C. §§78ff and 78j(b), and 17 C.F.R. §240.10b-5, "Under this theory, a person violates *Rule 10b-5* when he misappropriates material nonpublic information in breach of a fiduciary duty or similar relationship of trust and confidence and uses that information in a securities transaction." At the time of ReBrook's trial, the United States Supreme Court had not issued any decision clearly accepting this theory and there was a split of authority amongst the circuit courts of appeal. *See* footnote 5 of **APPELLANT'S BRIEF**.

through ReBrook's alleged violation of the honest services he owed to the public as a result of his employment.

On November 4, 1993, the United States provided the District Court with three separate proposed instructions, all addressing different aspects of honest services wire fraud. (JA at 1047-49). On November 5, 1993, following a three-day trial, the jury returned a verdict finding ReBrook guilty on both counts. (JA at 1126). The District Court only instructed the jury on an honest services wire fraud theory and never instructed the jury that ReBrook could be found guilty of wire fraud, based upon two separate theories. (JA at 1100).

In his motion for a new trial, ReBrook reasserted the arguments made in his pretrial motions and reasserted in the trial, particularly the vagueness of the term honest services. (JA at 1157). The only response offered by the United States to the vagueness challenge was "Defendant's claim that `honest service' is unconstitutionally vague has been squarely rejected by this Court as `disingenuous and specious.'" (JA at 1162). On January 19, 1994, the District Court denied ReBrook's motion for a new trial and specifically held 18 U.S.C. §1346, was not unconstitutionally vague in basing the scheme or artifice to defraud on the intangible right of honest services. (*United States v. ReBrook*, 842 F.Supp. 891 (S.D.W.Va. 1994); JA at 1168). Consistent with the District Court's pretrial opinion, at no point in this post-trial opinion did the

-4-

District Court suggest the wire fraud conviction was based upon any theory other than a scheme to defraud West Virginians of their intangible right to honest services. On February 7, 1994, ReBrook was sentenced to serve 27 months on each count, with the sentences to be served concurrently, and two years of supervised release. (JA at 1191).

On appeal, this Court affirmed ReBrook's honest services wire fraud conviction, but set aside the securities fraud conviction holding neither the language of section 10(b) nor United States Supreme Court precedent supported a securities fraud conviction under the misappropriation theory.[5] *ReBrook, supra.* As a result of the honest services wire fraud conviction affirmed by this Court, ReBrook was convicted of a felony, incarcerated, fined, lost his license to practice law for seven years, suffered a wide variety of personal and economic consequences, is prohibited from hunting with

---

[5]This case presents an interesting law school hypothetical, where two different decisions issued by the United States Supreme Court, after ReBrook was convicted, would have governed the law in the case if they had been decided earlier. The *Skilling* decision would have eliminated the honest services wire fraud charge while the decision by the United States Supreme Court in *United States v. O'Hagan*, 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997), would have sustained the legitimacy of using the misappropriation theory for the securities fraud count. With respect to the securities fraud conviction vacated by this Court, ReBrook's argument throughout has been this Court's decision acts as an acquittal and establishes he is factually and legally not guilty of that crime. The Magistrate believed the *O'Hagan* decision was relevant in this *coram nobis* proceeding and established ReBrook was not actually innocent. (JA at 1503). Because the District Court did not address the *O'Hagan* decision, ReBrook will not address its inapplicability in the present case.

his son, nephews, and brother, cannot renew his auctioneer's license, which he had before the conviction, is barred from joining certain organizations, and is barred from holding certain public offices. (JA. at 1196). Thus, even after ReBrook was released from prison and supervised release, he continues to be prejudiced and impacted by this honest services wire fraud conviction.

On June 24, 2010, the United States Supreme Court issued its decision in *Skilling*, examined the validity of a wire fraud conviction based upon an alleged breach of the duty to provide honest services, and found 18 U.S.C. §1346 to be very broad and to implicate the vagueness doctrine. However, rather than declaring this statute to be to unconstitutional as applied in all circumstances, the majority salvaged the statute by holding 18 U.S.C. §1346 "criminalizes only schemes to defraud that involve bribes or kickbacks." 561 U.S. at ___, 130 S.Ct. at 2931. On August 9, 2010, ReBrook filed a **PETITION FOR A WRIT OF ERROR CORAM NOBIS** in the United States District Court for the Southern District of West Virginia, seeking to have his honest services wire fraud conviction set aside because he continues to suffer prejudice as a result of this conviction. (JA at 1195).

In the April 6, 2011 hearing held before United States Magistrate Mary E. Stanley, the United States conceded, on the record, that ReBrook's conviction was not

based upon any evidence of bribes or kickbacks.[6] (JA at 1330). Thus, in the record, there is no dispute ReBrook's honest services wire fraud conviction did not involve any bribes or kickbacks found in *Skilling* to be required to sustain such a conviction.

On January 5, 2012, the Magistrate issued **PROPOSED FINDINGS AND RECOMMENDATION**, denying ReBrook the *coram nobis* relief requested. (JA at 1360). After ReBrook and the United States filed objections to this **RECOMMENDATION**, the District Court, with the Honorable Judge John Copenhaver presiding, issued a final **MEMORANDUM OPINION AND ORDER** and **JUDGMENT ORDER** on February 11, 2014, denying ReBrook all *coram nobis* relief. (JA at 1615). On March 4, 2014, ReBrook filed **PETITIONER'S NOTICE OF APPEAL**. (JA at 1630).

### Statement of the facts

In *United States v. Mandel*, 862 F.2d 1067 (4th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989), this Court granted *coram nobis* relief to former Maryland Governor Marvin Mandel. In reaching this decision, this Court specifically noted, **"[T]he government asks this court to review the evidence and decide what a jury would or might have found if the instructions had been proper, or, to put it more**

---

[6]Because their separate petitions for writ of *coram nobis* had been filed around the same time and were triggered by the *Skilling* decision, the Magistrate addressed the *coram nobis* arguments asserted by Mr. Bryan and ReBrook in the same hearing.

**bluntly, it asks us to convict the defendants of crimes with which they were not charged.  This, we decline to do."** (Emphasis added).  *Id.* at 1075.  ReBrook respectfully asks this Court to apply this same standard in the present case, where the case was tried on a theory of honest services wire fraud, but on appeal, **after** the jury returned its verdict against ReBrook, the United States mentioned in its appellate brief for the first time the jury actually was presented with two wire fraud theories–honest services and property wire fraud.

The facts relevant to ReBrook's underlying criminal conviction are summarized by this Court in *ReBrook*, 58 F.3d at 963-64:

> In April of 1990, the new Director of the Lottery Commission, Elton "Butch" Bryan, hired ReBrook to serve as the commission's attorney. The position included a variety of responsibilities, such as providing legal advice to the Lottery Commission and its Director, giving political advice to the Director, and reviewing and drafting documents for the Lottery Commission. The job was part-time and paid a salary of up to $ 25,000 per year.
>
> According to the evidence presented at trial, the general elections for statewide political offices in the autumn of 1992 were to have a direct effect on the expansion of the video gaming market in West Virginia. It was the Government's theory at trial that, from a date early in 1992, ReBrook had knowledge of the Governor's undisclosed plans to allow a statewide expansion of the video lottery immediately following the general election. In particular, Bryan testified at trial that at various points he told ReBrook of conversations that he had with Governor Gaston Caperton concerning the expansion of the video

lottery.

In 1992, Lottery Commissioner Bryan had decided to award the video lottery

contract to one company, Video Lottery Consultants, Inc. (VLC), which information

he shared with ReBrook:

> As the attorney for the Lottery Commission, ReBrook
> learned additional information concerning VLC and other
> video lottery competitors. For example, on or about
> September 23, 1992, Bryan discussed the status of VLC
> with the company's chief executive officer. That officer told
> Bryan that the stock's value had dropped approximately 50%
> in price over the preceding two weeks due to adverse
> administrative rulings in Australia where VLC also
> conducted business and that the stock's value would not be
> dropping any further. This information was not made public
> by VLC. ReBrook learned of the contents of Bryan's
> telephone call that same day from either Bryan himself or
> Jim Moran, an employee with a competing video lottery
> company.
>
> On September 24, 1992, ReBrook used all his
> available funds to purchase 100 shares of VLC stock, valued
> at $ 14.25 per share. Furthermore, ReBrook passed on the
> information he learned about the financial health of VLC to
> two friends who then purchased an additional 6,000 shares
> of VLC stock in their names. Following his purchase of
> VLC stock, ReBrook continued to represent the Lottery
> Commission without informing the Lottery Commission that
> he owned stock in VLC or that he stood to benefit
> substantially from the contemplated expansion of video
> lottery through a single source contract awarded to VLC. *Id.*

In its opening statement, the United States summarized the wire fraud charge

against ReBrook as follows:

There are two counts in this case and the defendant's stock purchase is unlawful in two ways. First, in buying the stock the defendant was using confidential information gained in the course of his employment for his own benefit. Thus in making that wrongful use of his confidential information, the defendant defrauded his employer of what he owed his employer, which was his honesty, his honest services. (JA at 603-04).

The only theory asserted by the United States against ReBrook on the wire fraud count was that he had denied the public his honest services. The initial substantive instruction given by the District Court addressed the ethical duties a lawyer owes to his client. (JA at 1098-99). Consistent with the United States' honest services wire fraud theory, the District Court instructed the jury:

> For the purpose of the wire fraud statute, the term "scheme or artifice to defraud **includes also a scheme or artifice to deprive another of the intangible right of honest services**. While it may be properly charged under the wire fraud statute that a scheme violates or has as one of its goals the violation of some particular duty or duties imposed by state law as it is alleged here, it is not necessary that the scheme be one which violates a particular state statute or regulation or that it have as its goal something which is a crime in common law. Rather for the purpose of the wire fraud statute, any scheme involving deception that employs wire communication in its execution that is contrary to public policy and conflicts with accepted standard of moral uprightness, fundamental honesty, fair play and right dealing, may constitute a scheme or artifice to defraud. (Emphasis added). (JA at 1100).

At no point in the instructions did the District Court identify or explain any other

possible wire fraud theory other than honest services wire fraud. This point was further established in the initial closing argument, where the United States asserted, "This case is not about one hundred shares of stock. It's about honest public service." (JA at 1066). In the final closing argument, the United States once again focused on ReBrook's duty to provide honest services, particularly based upon the ethical responsibilities he had as a lawyer. (JA at 1095-96).

In the brief filed by the United States in response to ReBrook's appeal from the underlying convictions, the United States noted, "The guideline for Count One (`honest services wire fraud') is USSG §2C1.7....." (JA at 1606). The United States never explained, either in the instructions or arguments, that the jury could convict ReBrook on the wire fraud charge based upon two completely different theories. The only wire fraud theory presented and explained to the jury was an honest services wire fraud theory.

## V. Summary of the argument

*Skilling* mandates *coram nobis* relief is warranted in this case because ReBrook meets the burden of showing he suffered an error that is of the most fundamental character–he was convicted of honest services wire fraud where there was no evidence of bribes or kickbacks. ReBrook did preserve the honest services wire fraud sufficient to preserve this issue for *coram nobis* relief. This Court has several *coram nobis*

decisions where relief was granted despite asserted procedural hurdles because the Court sought to achieve justice.  ReBrook was tried only on the honest services wire fraud theory.

## VI.  Argument

**The District Court erred in denying a writ of *coram nobis*, based upon *Skilling v. United States*, 561 U.S. 358, 130 S.Ct. 2896  (2010), which held an honest services wire fraud conviction cannot be sustained unless the conviction was based upon proof the defendant received bribes or kickbacks and here, the United States conceded ReBrook never received a bribe or kickback**

### A.

### ReBrook meets the standard for issuance of a writ of *coram nobis*

In the underlying criminal trial, ReBrook was convicted of one count of securities fraud, set aside by this Court after concluding the conviction could not be based upon the misappropriation theory, and one count of wire fraud, based upon the honest services theory rejected by the United States Supreme Court in *Skilling*, absent evidence of bribes or kickbacks.  Thus, ReBrook's criminal  trial largely consisted of evidence attempting to prove theories later found, as a matter of law, to be insufficient to sustain the two convictions obtained.  The fundamental unfairness to ReBrook and his actual innocence under these facts is what justifies the *coram nobis* remedy

asserted.[7]

In *Bereano v. United States*, 706 F.3d 568 (4th Cir. 2013), the petitioner, who had been convicted of multiple counts of mail fraud by sending false bills to his lobbying clients, sought *coram nobis* relief under *Skilling*. In *Bereano*, 706 F.3d at 575-76, this Court outlined the four-part test required for such relief:

> In order for a district court to reach an ultimate decision on coram nobis relief, a petitioner is obliged to satisfy four essential prerequisites. First, a more usual remedy (such as habeas corpus) must be unavailable; second, there must be a valid basis for the petitioner having not earlier attacked his convictions; third, the consequences flowing to the petitioner from his convictions must be sufficiently adverse to satisfy Article III's case or controversy requirement; and, finally, the error that is shown must be "of the most fundamental character." *United States v. Akinsade,* 686 F.3d 248, 252 (4th Cir.2012). *Id.*

In *Bereano*, *coram nobis* relief was denied because the jury, unlike in the present case, clearly was presented and instructed on property and honest services wire fraud theories. In *Bereano v. United States*, 2012 WL 683545, at *3 (D.Md. 2012), the District Court noted, "Though Bereano suggests that the Government relied heavily on the honest services theory of fraud in presenting its case, the Court does not find overwhelming reliance on a singular theory or any intimation by the Government to

---

[7]In *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012), this Court explained a *coram nobis* appeal is reviewed pursuant to an abuse of discretion standard.

the jury that the case is solely or primarily an honest services case. While it is true that the Government argued to the jury that Bereano was a fiduciary and violated his client's trust, it equally argued that Bereano committed pecuniary fraud by taking money that he was not authorized to take." In the present case, the sole and primary focus of the wire fraud count was ReBrook's alleged failure to provide honest services. The contrast between the facts in *Bereano* and the present case is striking and supports ReBrook's claim for relief.

In applying this analysis to the present case and similar to the facts in *Bereano*, there is no dispute ReBrook meets the first three parts of this test. First, ReBrook does not have available to him any other remedy, such as habeas corpus, because he completed serving his sentence years ago and no longer is incarcerated. Second, ReBrook already had finished serving his sentence by 2010, when the *Skilling* decision was issued and within a couple of months ReBrook promptly filed his **PETITION FOR WRIT OF CORAM NOBIS**. Third, ReBrook continues to suffer consequences flowing from his honest services wire fraud conviction.

The fourth element, proving the error was of the most fundamental character, is where the parties in this case part company. To appreciate how ReBrook's honest services wire fraud conviction justifies the *coram nobis* relief requested, a review of *Skilling* is pertinent.

-14-

**B.**

***Skilling* invalidates ReBrook's honest services wire fraud conviction**

Section III of the *Skilling* opinion addresses the validity of Mr. Skilling's honest services wire fraud conviction. In that section, the United States Supreme Court discusses at length the history of mail fraud and wire fraud, beginning with its original enactment in 1872. The Court traces the history of the *intangible right to honest services* doctrine beginning with the Fifth Circuit's *Shausan v. United States*, 117 F. 2d 110 (1941), up to the time of *McNally v. United States*, 483 U.S. 350 (1987). *Id.*, 561 U.S. at ___, 130 S.Ct. at 2926.

The *Skilling* Court went on to note, "'Congress responded swiftly. The following year, it enacted a new statute 'specifically to cover one of the *intangible rights* that lower courts had protected... prior to *McNally*: 'the intangible right of honest services." *Id.* Later, the Court observed that, "In view of this history, there is no doubt that Congress intended §1346 to reach *at least* bribes and kickbacks. Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine. (Footnote omitted). To preserve the statute without transgressing constitutional limitations, **we now hold**

**that §1346 criminalizes only the bribe-and-kickback core of the pre-*McNally* case**

-15-

**law.**[8] (footnote omitted, emphasis supplied).  *Id.*, 561 U.S. at ___, 130 S.Ct. at 2931.

In the present case, the United States conceded on the record there were no allegations nor any evidence proving ReBrook received any bribes or kickbacks.  This concession is further supported by the underlying trial transcript.  The indictment alleged ReBrook had deprived his employer, the State of West Virginia, of its "intangible right to honest services."  The jury was instructed only on this honest services theory.  At no point did the United States assert or present any evidence that ReBrook  actually received bribes or kickbacks.

Because ReBrook is actually innocent of wire fraud because he never received any bribe or kickback, he is entitled to *coram nobis* relief.  However, the United States argued *coram nobis* relief should be denied because ReBrook's claim is procedurally defaulted based upon arguments not raised in his appeal, and somehow the jury in this case was presented with two theories of wire fraud–honest services and property.  ReBrook respectfully submits a review of these assertions reveals the District Court erred in denying *coram nobis* relief based upon these arguments.

---

[8]In footnote 38 of *Skilling*, the United States Supreme Court cited this Court's *Bryan* decision, among many others, as cases where federal courts demonstrated their reluctance to find the honest services wire fraud theory to be unconstitutionally vague.

## C.

### ReBrook sufficiently preserved the honest services wire fraud issue

The District Court concluded the Magistrate was correct in finding ReBrook had failed to sufficiently raise in his appeal to this Court the unconstitutional vagueness of the honest services wire fraud charge. (JA at 1678-79). Based upon this procedural default, the District Court concluded ReBrook could not receive the requested *coram nobis* relief.

Although ReBrook cited and relied upon various cases from this Court as well as others where *coram nobis* relief was awarded that clearly could never have met the strict procedural standard articulated by the Magistrate and District Court, including decisions involving guilty pleas and where no appeal was filed, those decisions were not addressed by the District Court.[9]

---

[9]*Mandel*, *supra* (Rejected procedural argument that error had not been sufficiently preserved); *United States v. Hoffman*, 1991 U.S.App.LEXIS 3734 (4th Cir. 1991)(Unpublished)(*Coram nobis* relief granted, even though no appeal had been filed); *Mathis v. United States*, 369 F.2d 43 (4th Cir. 1966)(*Coram nobis* in a guilty plea); *United States v. Shamy*, 886 F.2d 743 (4th Cir. 1989)(No procedural default where *coram nobis* petitioner did not preserve error); *Ingber v. Enzor*, 841 F.2d 450 (2nd Cir. 1988)(No procedural default where *coram nobis* petitioner did not preserve error); *Ross v. Reed*, 704 F.2d 705, 708-09 (4th Cir. 1983), *aff'd.* 468 U.S. 1, 82 L.Ed.2d 1, 104 S.Ct. 2901 (1984)(Not required to raise argument where law appears to be well settled). The Magistrate specifically chose not to address the applicability of these cases and the District Court similarly made no reference to them in its final decision. (JA at 1506-08).

-17-

As noted above and conceded by the District Court, ReBrook clearly raised in pretrial and post-trial motions a challenge to the unconstitutional vagueness of 18 U.S.C. §§1343 and 1346, to the extent these statutes attempt to base a wire fraud conviction on an alleged violation of the duty to provide honest services. (JA at 1678). However, the District Court held this vagueness issue was not sufficiently raised in the appeal to this Court.

At the time the arguments were presented to the Magistrate, the parties were having some difficulties locating the appellate briefs filed with this Court.[10]  All the parties had to review at that time was the decision by this Court.  In *ReBrook*, 58 F.3d at 966–67, this Court clearly questioned what issues were raised in ReBrook's appeal and quoted ReBrook's brief asserting the wire fraud conviction was invalided because the securities fraud conviction was invalid.

However, in footnote 6, 58 F.3d at 967, this Court gives ReBrook the benefit of the doubt and holds that the argument raised in *United States v. Bryan*, 58 F.3d 933 (4th Cir. 1995), that a valid conviction under 18 U.S.C. § 1346, requires more than proof of loss of honest services, such as the violation of a law, statute or binding

---

[10]During the hearing before the Magistrate, it was noted on the record even the Magistrate had not been able to locate the appellate briefs. (JA at 1303).  After the Magistrate issued her recommendations, the appellate briefs were found and ReBrook moved to supplement the record in this case.

regulation, similarly would be rejected by this Court as applied to ReBrook. The end result is this Court in *ReBrook* continued to hold that proof of the loss of honest services was sufficient to support a conviction under 18 U.S.C. §1346.

In footnote 7, 58 F.3d at 967, this Court concludes "from our reading of his brief, ReBrook's appeal concerning the wire fraud count is narrow in scope." Specifically, this Court asserts ReBrook did not challenge 18 U.S.C. § 1346, as being unconstitutionally vague nor did he specifically question the sufficiency of the evidence. It is this language in this Court's decision, which is most troubling from a procedural default point of view. However, even this statement is qualified and demonstrates this Court clearly had questions regarding the arguments raised in ReBrook's appeal.

ReBrook respectfully submits a review of the Brief of Appellant filed in his underlying criminal appeal demonstrates he did, in fact, include a void for vagueness argument as to the securities fraud and wire fraud convictions. In his appeal brief, ReBrook specifically sought to have both of his convictions–securities fraud and wire fraud– reversed and a new trial awarded. (JA at 1542-43). Throughout his brief, ReBrook lumped the two charges together and referred to them collectively as charges of "insider trading." (JA at 1550-66). In the context of this case, "insider trading" referred to the charges of securities fraud **and** wire fraud. Consequently, in his brief,

-19-

ReBrook did not make any neat distinction between the arguments applicable to either or both the securities fraud and the wire fraud charges, but rather treated them together and made constitutional and statutory arguments with respect to both.

As the brief progresses, some of the arguments challenging the insider trading charges apply only to the securities fraud count, some only to the wire fraud count, and some to both counts. ReBrook specifically asserted the vagueness of these insider trading charges and quoted from the United States Supreme Court decision in *Kolender v. Lawson*, 461 U.S. 353 (1983), on the void-for-vagueness doctrine. (JA at 1549-50). ReBrook also includes a long quote from *United States v. Walters*, 997 F.2d. 1219 (7th Cir. 1993), addressing the broad construction available under the mail fraud statute and further cites an article written by Geraldine Szott Moohr entitled *Mail Fraud and the Intangible Rights Doctrine: Someone to Watch Over Us*, 31 HARV. J. ON LEGIS. 153 (1994). ReBrook's appellate brief also includes a heading, "Why the Government's Theory Fails for Vagueness," and then quotes from *McNally v. United States*, 483 U.S. 350 (1987), which was the United States Supreme Court decision finding "honest services" in the mail and wire fraud statute to be void for vagueness. (JA at 1564).

The United States premises its arguments on the assumption that for ReBrook to receive the benefit of *Skilling*, he necessarily is required to have raised the identical argument asserted by defense counsel in *Skilling*. While there is no dispute that raising

the identical issue as defense counsel in *Skilling*–18 U.S.C. §1346 is unconstitutionally void for vagueness as applied in an honest services wire fraud case–would have simplified the analysis in this case considerably, the technical question raised herein is whether **any** argument challenging the validity of ReBrook's honest services wire fraud conviction is sufficient to avoid a procedural default. Even the United States in its brief concedes ReBrook did challenge the validity of his honest services wire fraud conviction.

Since the United States Supreme Court did not declare 18 U.S.C. §1346 as unconstitutionally vague, but rather read into it a requirement that to sustain an honest services wire fraud conviction, there must be proof that the defendant received kickbacks or bribes, ReBrook respectfully submits **any** challenge made to the validity of his honest services wire fraud conviction sufficiently preserves the issue and avoids a procedural default because there is no dispute that ReBrook never received any kickbacks or bribes.

Furthermore, ReBrook respectfully submits a review of this Court's *coram nobis* decisions demonstrates this Court has been more concerned with addressing the fundamental unfairness of a person remaining convicted of a crime when, under the law as expressed in a more recent decision, the person is actually innocent of the crime.

For example, in *Mandel*, 862 F.2d at 1074, this Court, after analyzing the

-21-

retroactive application of *McNally* to the defendants who filed for *coram nobis* relief, noted, "it is clear to us that if this case were before us on direct appeal we would be required to overturn all the convictions." Applying that same standard in the present case, this Court would be required, under *Skilling*, to reverse ReBrook's honest services wire fraud conviction if this case were on direct appeal at this time. "An error `of the most fundamental character' must have occurred to warrant issuing the writ, and no other remedy may be available." *Mandel*, 862 F.2d at 1075. A decision holding that certain actions do not meet the elements of a particular crime is about as fundamental an issue as can be raised in a criminal case.

This Court has recognized the availability of *coram nobis* relief, without imposing any particular procedural requirement. In *Hoffman*, the petitioner had been convicted of seven counts of mail fraud and seven counts of making false statements. After *McNally*, this petitioner filed a writ of *coram nobis* **even though he had never filed any appeal from the underlying conviction.** The District Court granted the writ of *coram nobis* as to the mail fraud counts, based upon the holding in *McNally*, but denied any relief on the remaining false statement convictions. This Court affirmed the lower court's decision under facts where clearly the *McNally* issue had never previously been presented on appeal.

In a much earlier *coram nobis* decision, *Mathis*, *supra,* the petitioner **had**

**pleaded guilty** to a crime without counsel and without being advised of his right to have counsel appointed for him, as required by Rule 44 of the Federal Rules of Criminal Procedure. This petitioner, who was serving a state sentence subject to a federal detainer arising from this guilty plea, filed for *coram nobis* relief, even though arguably he presently was not suffering any prejudice from the federal conviction, which sentence he had not yet begun to serve.

*Mathis* recognizes that *coram nobis* relief is broader than earlier cases had suggested and has been applied in situations where the petitioner was not suffering from any present adverse effect arising from the conviction. In granting *coram nobis* relief, this Court once again noted this writ was designed "'to achieve justice.'" Once again, *coram nobis* relief was granted where no appeal had been filed from the initial federal court conviction. 369 F.2d at 49.

In *Shamy*, *supra*, a petitioner, who had been convicted of mail fraud, wire fraud, and racketeering, sought *coram nobis* relief, based upon *McNally* and *Mandel*. The United States in *Shamy* asserted that *coram nobis* relief should not be granted because at trial, Mr. Shamy had failed to seek an instruction consistent with *McNally*. The United States argued that such an instruction had been requested and denied in *Mandel*, which preserved the issue for coram nobis relief.

In rejecting this procedural argument, this Court held:

-23-

With one exception, all of the essential facts in this case are indistinguishable from those of *Mandel*. In this case, Shamy did not request a jury instruction consistent with *McNally*. We view this as a matter of insufficient consequence to bar the issuance of the writ. *Ingber v. Enzor*, 841 F.2d 450 (2nd Cir. 1988); *see also Ross v. Reed*, 704 F.2d 705, 708-09 (4th Cir. 1983), *aff'd.* 468 U.S. 1, 82 L.Ed.2d 1, 104 S.Ct. 2901 (1984). 886 F.2d at 745.

In *Ingber*, 841 F.2d at 454-55, cited as authority for the holding in *Shamy*, the

Second Circuit explained why it refused to procedurally default those petitioners who

failed to anticipate the holding in *McNally*:

A defendant may be denied the benefit of a new rule of law on collateral attack of his conviction if the rule is announced, and he fails to raise it, before his direct appeals are exhausted. *See Davis, 417 U.S. at 345*. **However, this court has taken a different approach to retroactivity when the new rule is handed down after the time for direct appeal has expired**....

**Although Ingber failed to raise his present challenge on appeal or in a petition for writ of certiorari, retroactive application is necessary to avoid an unfair result....Were we to penalize Ingber for failing to challenge such entrenched precedent, we would ascribe to attorneys and their clients the power to prognosticate with greater precision than the judges of this court. Such a rule would encourage appeal of even well-settled points of law. We see no value in imposing a responsibility to pursue such a "patently futile" course. *See Liguori*, 438 F.2d at 665. Moreover, as we observed in an analogous context in *Loschiavo*: "To say that in such circumstances the system of justice can provide no remedy because of a court-made rule that failure to take a direct appeal on the specific issue bars all later motions for collateral**

-24-

> **attack... indicates a lack of due process in the judicial system."** *Loschiavo,* **531 F.2d at 666.**  (Emphasis added).

Similarly, this Court in *Ross*, 704 F.2d at 708-09, also cited in *Shamy*, discussed whether a defendant convicted in state court, who had failed to object to instructions placing the burden of proving self-defense on the defendant, should be barred procedurally from raising that issue in a habeas corpus action after the United States Supreme Court issued its decision in *In re Winship*, 397  U.S. 358 (1970):

> **Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones.  Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable.**  In a criminal case, of course, a convicted defendant's lawyer must present  any contention his client wishes him to present, but he may do that without a representation of his own endorsement. A very novel constitutional claim is unlikely to spring from such a client.  (Emphasis added).

*Shamy*, *Ingber*, and *Ross* recognize that where existing case law supports the elements of a particular crime or some aspect of criminal procedure, a criminal defendant should not be required to raise on appeal some argument attacking that established point of law to avoid being procedurally barred in the future when a new rule of law is recognized in a subsequent decision.  As noted by the District Court in its two decisions, there was ample case law in this Court and in all other jurisdictions

supporting honest services wire fraud convictions.  The chances that this substantial body of law was going to be altered on appeal was rendered even slimmer by the fact that 18 U.S.C. §1346, was enacted by Congress in response to the holding in *McNally*.

ReBrook respectfully submits, in the event this Court concludes the vagueness issue was not sufficiently raised in the underlying appeal, this Court should follow the foregoing case law, designed to provide a just remedy when a person has been convicted of a crime based upon facts that later are determined to be insufficient to support such a conviction.

### D.

### The jury was never presented with a "property" wire fraud theory

The District Court concluded the jury was presented with a property wire fraud theory, therefore, this conviction can be sustained based upon this valid theory, even if the honest services wire fraud theory failed to meet the *Skilling* standard.  (JA at 1681-82).  The United States in the present case is attempting to do what it tried but failed to do in *Mandel*, where the United States presented this Court with multiple property wire fraud theories ultimately rejected by this Court because those theories had not been presented to the jury.

Mr. Mandel was charged with devising a scheme to defraud the State of Maryland of his honest services, and "[t]o obtain, directly and indirectly, money,

property and other things of value, by means of false and fraudulent pretenses, representations, and promises." *Mandel*, 862 F.2d at 1069. There, as here, the trial court gave a general instruction based on the statutory language of the mail fraud statute, which included a scheme "to obtain money or property . . . ." *Id.* at 1070. Yet, this general instruction was insufficient to convince the district court and this Court to find that a property fraud theory was raised against Mr. Mandel. There, as here, the jury was not instructed "to find that the . . . [State of Maryland] itself was defrauded of any money or property." *Id.* at 1072 n.9 (quoting *McNally*, 483 U.S. at 360). There, as here, "there was one theory of the case before the jury which would alone permit conviction, that the State of Maryland and its citizens were defrauded of the honest and faith services of Mandel, and this was sufficient to convict the petitioners of mail fraud." *Id.* at 1074. Furthermore, under *Mandel*, where alternative theories were presented to and considered by the jury, "we must be able to say 'with a high degree of probability' that the jury did not rely on the legally incorrect theory.'"
*Mandel*, 862 F.2d at 1073 (quoting *United States v. Alexander*, 748 F.2d 185, 189 (4th Cir. 1985)).

In rejecting the United States' arguments in *Mandel*, 862 F.2d at 1074, this Court held:

Even if the government's theories mentioned just above may be proper subsequent to *McNally,* they are not at issue in this case because the jury was not instructed on them. *See McNally,* 483 U.S. at ——, 107 S.Ct. at 2880–84: "Although the Government now relies in part on the assertion that the petitioners obtained property ... there was nothing in the jury charge that required such a finding." In *Mandel,* there was one theory of the case before the jury which would alone permit conviction, that the State of Maryland and its citizens were defrauded of the honest and faithful services of Mandel, and this was sufficient to convict the petitioners of mail fraud.

A similar point was made in *United States v. Post*, 950 F.Supp.2d 519, 533

(S.D.N.Y. 2013):

> **Just as juries are presumed to follow the instructions they are given**, *see, e.g., United States v. Sabhnani,* **599 F.3d 215, 240 (2d Cir.2010), they cannot be presumed to have found facts or elements of offenses they are** *not* **instructed to find,** *see United States v. Labat,* **905 F.2d 18, 23 (2d Cir.1990)** (noting, where jury was not instructed on *Pinkerton* liability, that defendant's conviction could not be affirmed on that basis: "We may not permissibly infer either that the jury found [the defendant] guilty on a theory as to which it was not instructed, or that, had the jury been properly instructed on that theory, it would have found him guilty on that basis." (citations omitted)); *see also Camacho v. United States,* 204 F.Supp.2d 667, 675 (S.D.N.Y.2002) ("[A] reviewing court cannot uphold a conviction on a theory not charged to the jury."). (Emphasis added).

In the present case, the jury was never instructed it could find ReBrook guilty of wire fraud, based upon two separate theories and never was instructed that "property" could include an employer's interest in the confidentiality of information.

-28-

The idea that confidential information somehow is "property" is a sophisticated notion that never would have occurred to the jury, absent an instruction to that effect. As noted in *Mandel* and *Post*, if the jury was never instructed on a particular theory of the case, then the jury was not in any position to determine whether or not the elements of a particular theory had been proven beyond a reasonable doubt and, more specifically, the jury would not have known either the elements of this theory nor what facts may be relevant to such uninstructed theory.

Arguments made by the United States at trial and in the multiple *ReBrook* decisions issued by the District Court and this Court were focused on the loss of honest services as sustaining the wire fraud conviction. The District Court and this Court easily could have avoided addressing the vagueness issue raised by ReBrook simply by noting the jury was presented with two separate wire fraud theories, but there is no such discussion in these decisions. Simply labeling the alleged confidential information as property does not resolve this issue because fundamentally, the United States was accusing ReBrook of violating his duty to provide honest services to the State.

Consequently, ReBrook respectfully submits the United States should not be permitted to rewrite history and claim, after the trial, that somehow the jury was presented with two separate wire fraud theories. Once the Court concludes, as it did

-29-

in ReBrook's original appeal, that ReBrook's wire fraud conviction was based on loss of honest services, *Skilling* requires *coram nobis* relief because there was no evidence of bribes or kickbacks.

## VII.  Conclusion

For the foregoing reasons, Appellant William Edward ReBrook, III, respectfully moves this Court to reverse the final order of the District Court, to grant ReBrook's **PETITION FOR A WRIT OF ERROR CORAM NOBIS**, to vacate ReBrook's conviction for one count of wire fraud, based upon the United States Supreme Court's decision in *Skilling*, which found the loss of honest services wire fraud theory to be vague,  absent evidence of  bribes or kickbacks, and  by ordering any fines  paid  by ReBrook to be returned to him.  Additionally, ReBrook respectfully seeks all other relief to which ReBrook may be entitled under the law.

## VIII.

## Request for oral argument

Counsel for Appellant William Edward ReBrook, III, respectfully requests oral argument in this matter.

**WILLIAM EDWARD REBROOK, III**,
Petitioner–Appellant,

–By Counsel–

 /s/ Lonnie C. Simmons
Lonnie C. Simmons (W.Va. I.D. No. 3406)
**DITRAPANO, BARRETT, DIPIERO,
MCGINLEY & SIMMONS, PLLC**
P.O. Box 1631
Charleston, West Virginia 25326-1631
(304) 342-0133
lonnie.simmons@dbdlawfirm.com

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>14-6352</u>        **Caption:** <u>William Edward ReBrook, III v. United States</u>

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [✓]    this brief contains _____ 7,576 _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ ]    this brief has been prepared in a proportionally spaced typeface using <u>WordPerfect 2011</u> [*identify word processing program*] in <u>Times New Roman 14 Point</u> [*identify font size and type style*]; **or**

    [ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Lonnie Carl Simmons</u>

Attorney for <u>Appellant William ReBrook</u>

Dated: <u>5/1/2014</u>

# CERTIFICATE OF SERVICE

I certify that on <u>May 1, 2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Larry Robert Ellis
OFFICE OF THE U.S. ATTORNEY
Southern District of West Virginia 300
Virginia Street, East
P. O. Box 1713
Suite 4000
Charleston, WV 25326-1713
304-345-2200
larry.ellis@usdoj.gov

/s/ Lonnie Carl Simmons
_____
             Signature

5/1/2014
_____
                Date